# LEFFINGWELL a. CHAVE.

*New York Superior Court; Special Term, April,* 1860.

INJUNCTION. — SERVICE OF AFFIDAVIT. — INJUNCTION GRANTED BEFORE SERVICE OF SUMMONS. — UNDERTAKING. — NEGLECT TO FILE IT.

Where an injunction is granted on a verified complaint, service of a copy of the complaint with the injunction, is service of a copy of the affidavit on which it was granted within section 220 of the Code.

Though an injunction-order cannot become operative until the action is actually commenced by service of summons, it may be granted before service of summons, so as to operate as soon as the action is commenced.

Under section 222 of the Code—prescribing that on granting an injunction, the judge shall require an undertaking " on the part of the plaintiff, with or without sureties"—an approved undertaking, executed by *any* persons of competent ability, agreeing that the plaintiff shall pay to the defendant the damages which he may sustain, and procured and furnished by the plaintiff or his attorney for the security of the defendant, is sufficient. It is not necessary that the plaintiff execute the undertaking.

Where plaintiff inadvertently neglected to file the undertaking given on his part on obtaining an injunction, until after notice of motion to dissolve it upon that ground, the court relieved him by sustaining the injunction, notwithstanding the delay in filing, upon his payment of the costs of the motion.

Motion to dissolve an injunction.

The injunction was granted as a provisional remedy, and the grounds upon which the defendants asked to have it dissolved were, that the affidavits on which it was granted, were not served; that it was granted before any service of the summons, and, therefore, before any action had been commenced; that the undertaking given on the granting of the injunction was not executed by the plaintiff, nor by any person on his behalf, but merely by sureties; and that the undertaking, and the complaint (which was used as an affidavit), on which the injunction was granted, had not been filed with the clerk as required by rule 4 of 1858, although more than five days had elapsed since the injunction was granted. Rule 4 provides that, in case of an

omission to file the undertakings required by that rule, to be filed within five days from the granting of injunctions and certain other orders, the defendant shall be at liberty to move the court to vacate the proceedings for irregularity, with costs, as if no undertaking had been given.

*Bliss & Barlow*, for the motion.

*Charles E. Jenkins*, opposed; showed that the filing was omitted through inadvertence, and that the papers had been filed since the notice of this motion had been served; and that the only affidavit on which the injunction was granted was the verified complaint, which was served with the summons and the injunction.

WOODRUFF, J.—The objection that the affidavits on which the injunction was granted were not served, is not insisted upon. The plaintiff's affidavit shows that no other affidavit than the complaint, duly verified, was presented to the justice for the purpose of obtaining an injunction. This is sufficient for that purpose. By the plain terms of section 219, a temporary injunction may be granted, when it " appears by the complaint" that a case exists in the plaintiff's favor, entitling him to have the defendant restrained. Whether under the language of section 220, requiring that " a copy of the affidavit" be served with the injunction, the complaint and verification are to be regarded as " an affidavit," as sometimes held, or the requirement of section 220 in this be held to relate only to cases in which the injunction is obtained upon affidavit (strictly so called), after the suit has been commenced; in either view it is sufficient to serve with the injunction the complaint and verification upon which it was granted.

The next objection denies the jurisdiction of the justices to grant an injunction-order before the actual service of the summons.

The language of section 220 is: " The injunction may be granted at the time of commencing the action, or at any time afterwards, before judgment," &c.; and section 99 declares that " an action is commenced as to each defendant, when the summons is served on him or on a co-defendant, who is a joint con-

tractor, or otherwise united in interest with him ;" and section 127, that " civil actions in the courts of record in this State shall be *commenced* by the *service* of a summons."

Under these provisions it is plain, I think, that an injunction-order cannot become operative until the summons in the action has been served ; and that the service of an injunction upon the defendant prior to the service of the summons would be irregular and ineffectual.

It does not follow, I think, that the injunction-order may not be signed by the justice preparatory to such service, and be delivered by the justice to be served with the summons, although until the summons is served it has no effective operation.

The language, the injunction may be granted " at the time of commencing the action, *or* at any time afterwards," was meant to define two periods. If the summons must in all cases be served before the justice has jurisdiction to grant the order, then no injunction can issue until *after* the action *has been* commenced ; and the words, " at the time of commencing the action," are without meaning and superfluous ; but the Code means that a plaintiff may not only have an injunction *after* his action is commenced, but that he may have it at that *prior time* described by the words, " at the time of *commencing*" his action ; and in this connection those words mean, while the work of commencing the action is going on, and not after it is finished.

It imports that the injunction may be obtained, so that it shall operate at the time when, and so soon as, the action is commenced, and not alone after it is commenced.

This accords with good sense. It meets a very large class of cases, in which it is of vital importance to a plaintiff to enjoin the defendant at the very instant he is apprised that an action is commenced, and in which the defendant would, but for such injunction, defeat the very object of the suit.

The section which declares that the court is deemed to have acquired jurisdiction in a civil action from the time of the allowance of a provisional remedy (§ 139), is in harmony with this construction, and sustains it.

The objection that the undertaking was not signed by the plaintiff, or his agent, or by some person who in very terms is described on the face of the undertaking, as acting " on the part

of the plaintiff," raises a question in regard to which there has been some conflict of opinion.

The language of section 222, is that, " the court or judge shall require a written undertaking on the part of the plaintiff, with or without sureties, to the effect that the plaintiff will pay to the party enjoined such damages," &c.

In my opinion the just meaning of this language is satisfied, and all the proposed benefits to the defendant are secured by construing the words, " on the part of the plaintiff," as simply words of contrast or opposition to the part of his adversary ; and that an approved undertaking, executed by any persons of competent ability, agreeing that the plaintiff shall pay to the defendant the damages which he may sustain, if it be procured and furnished by the plaintiff or his attorney for the security of the defendant, is an undertaking *on the part of the plaintiff*, within the meaning of this section.

If this be not so, then, " on the part of the plaintiff," can only mean " executed by the plaintiff." No other person can execute it who would not be (as between him and the plaintiff) a mere surety.

It is suggested that his agent or attorney may execute the undertaking. No doubt he may, but if he executes it by the plaintiff's authority, then it is, in law, the plaintiff's undertaking, and not his own ; if he have no such authority, then he executes it just as any other person would execute it, binding himself, and not the plaintiff ; and he is just as much a surety as any other person would be.

Suits are often necessary when a plaintiff is out of the State or sick, or under disability, or an infant, or otherwise incompetent, or unable to execute an undertaking, or to authorize any agent or attorney to do so. I cannot concede that it was intended that in such case no injunction should be issued.

The words " by the plaintiff, with or without sureties," had they been used, would be plain, and would require the plaintiff to execute them ; but the words, " on the part of the plaintiff, with or without sureties," are fully satisfied, if any person or persons in aid of the prosecution, acting in furtherance of the action, at the instance of the plaintiff, will peremptorily and unqualifiedly undertake that the plaintiff shall pay to the defendant the damages which he may sustain.

The terms, "with or without sureties," would seem to indicate that whoever gives the absolute undertaking, whether it be the plaintiff himself, or some person or persons whom he or his attorney may procure, there may still be sureties if the judge so require. The forms of undertaking now in common use, make all the undertakers, in form and in fact, principals as between them and the defendant, and in that sense they are absolute undertakings on the part of the plaintiff, and not undertakings with sureties ; and such is the undertaking in this case.

It is only in accordance with the language of the section under consideration, to say that an absolute undertaking that the plaintiff will pay (whether executed by him or by other persons), is an undertaking on the part of the plaintiff, and the court or judge may receive it if satisfactory, or he may require the security of others who shall execute in very terms as " *sureties.*"

That those who sign as sureties may so express their obligation is plain. Oftentimes they will prefer to do so, and the utmost that can be claimed by a defendant (if so much even be conceded) is, that there shall be a principal in the undertaking *in form*, and whom *he* can treat as *principal* without the necessity of demand or notice ; and if the responsibility of such principal be inadequate, then that he may have sureties. This construction would harmonize with the claim that in using the terms, "with or without sureties," the Legislature necessarily imply that there must be a principal, since otherwise there is no surety.

If a defendant bring his action on an undertaking in the form in common use, in which the undertaking is absolute, he will be the first to say, "as between me and yourselves, you are principals and not sureties." If so, then he has an undertaking given on the part of the plaintiff strictly *without sureties.*

Nor is it doubtful, I think, that an undertaking in the form, "I undertake and promise," &c., executed by one person, with a further agreement in due form by another person, by which he became *bound* as *surety*, would be a compliance with the statute in its terms, as well as its meaning, although the plaintiff signed neither. Indeed, if that form of undertaking had been introduced into use, I greatly doubt that this question would have ever arisen.

But as undertakings are in general in form absolute, binding all the signers as principals, it has happened that they have been called sureties, and somebody is sought for to be principal, in the terms " on the part of the plaintiff."

I repeat, that an approved absolute undertaking, that the plaintiff will pay, &c., is enough, whether it be executed with sureties or without sureties; and such an undertaking has been given here.

I am aware that there has been on this point, also, a difference of opinion. The late Chief-justice Duer, in Richardson *a.* Craig (1 *Duer*, 666), held that similar words in the section (182), prescribing the undertaking to be given on obtaining an order of arrest, made it necessary that the plaintiff should sign the undertaking. But he was compelled to make his own construction yield when the plaintiff was an infant, &c. In Sieff *a.* Shausenburgh (September 22, 1858), I am told that Chief-justice Bosworth held an absolute undertaking sufficient to justify an order of arrest, though neither signed by the plaintiff nor by any one professing to be his agent;* and see also Askins *a.* Hearns (3 *Abbotts' Pr. R.*, 184); Bellinger *a.* Gardner (12 *How. Pr. R.*, 381).

The last objection to the plaintiff's proceedings is, that he has

---

* Sièff *a.* Shausenburgh came before the court at special term on a motion to discharge from arrest.

Bosworth, J.—Defendant having been arrested in an action of assault and battery, moves to vacate the order of arrest, because the undertaking on the part of the plaintiffs is executed by only one surety, and not by either plaintiff; and if that is denied, to mitigate bail, the sum required being $1000.

The alleged irregularity is not specified in the notice of motion. (*Rule* 25.) The undertaking is valid, though signed by only one surety and not by the plaintiffs. (4 *Seld.*, 446.) The sufficiency of the surety is not questioned. The amount of bail cannot be reduced, as the opposing affidavits are explicit as to the fact of an aggravated assault, and on this motion it is impossible to say that they are untrue, and that the affiants on the part of the plaintiffs testify truly. That question must be determined by a jury.

Motion denied, but without costs to either party.

Compare Republic of Mexico *a.* Arrangoiz (5 *Duer*, 644), where it was held that an undertaking by an agent of a foreign government which is plaintiff, is sufficient as an undertaking on the part of the plaintiff under the provision of the Code, relative to undertakings on arrest. (See also North American Coal Company *a.* Dyett, 4 *Paige*, 273.)

not filed the papers upon which the injunction was granted, as required by the fourth of the rules of court. When the notice of this motion was given, the fact so stated was true, and the court might vacate the injunction-order on that ground. But it appears by the affidavit on behalf of the plaintiff, that the omission to file the papers was an inadvertence, and so soon as the notice of motion was received, the papers were filed. Under such circumstances the court have a discretion to relieve the plaintiff from the consequences of his omission; but as the defendant's motion is regular, such relief should be granted on terms. Indeed, if the plaintiff had at once given notice of the filing, and sought a waiver of the motion, I would have allowed no costs to the defendant if he persisted in his motion.

All the other grounds of motion must be denied; but upon this last point the motion must be granted, unless the plaintiff pays the costs of motion, $7. If he pay those costs within five days, the motion is denied.

---

## SALTERS a. GENIN.

*New York Superior Court; General Term, June,* 1860.

AMENDMENT.—APPEALABLE ORDERS.—PLEADING.

In what cases an order refusing to allow an amendment of the pleadings is appealable as involving the merits, or affecting a substantial right.

A party should not have leave to put in a verified pleading containing allegations in alternative which are inconsistent.

Appeal from an order refusing leave to amend the complaint.

The facts of the case are fully reported, 7 *Ante*, 193, and 8 *Ib.*, 253, in which latter volume the decision on the order now appealed from is stated.

*Albert Mathews*, for the appellant.

*Edward S. Clark* and *Charles Tracy*, for the respondent.